IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

MARVIN D. LANCASTER,
    Petitioner,

vs.                                                                   Case No.: 3:09cv333/MCR/EMT

KENNETH S. TUCKER,
    Respondent.
_____/

## REPORT AND RECOMMENDATION

This cause is before the court on Petitioner's petition for writ of habeas corpus filed under 28 U.S.C. § 2254 (doc. 1). Respondent filed an answer and relevant portions of the state court record (docs. 18, 29). Petitioner filed a reply (doc. 20).

The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N. D. Fla. Loc. R. 72.2(b). After careful consideration of all issues raised by Petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a). It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

I.     BACKGROUND AND PROCEDURAL HISTORY

Petitioner was first received by the Florida Department of Corrections ("FDOC") on August 23, 1973, pursuant to a 40-year sentence of imprisonment imposed by the Hillsborough County Circuit Court, Case No. 73-987, on August 17, 1973 (doc. 18, Ex. A, Affidavit of Stacey Haynes; Ex. C).[1]

---

[1] Hereinafter all citations to the state court record refer to the exhibits submitted with Respondent's answer (doc. 18). If a cited page has more than one page number, the court cites to the "Bates stamp" page number.

After serving approximately five (5) years of his sentence, the Florida Parole Commission ("FPC") directed the FDOC to release Petitioner to parole release supervision on March 16, 1979 (Ex. A, Haynes Aff.; Ex. E at 17–18). On April 2, 1980, the FPC issued a Warrant for Retaking Parole Releasee based upon new criminal offenses (Ex. A, Haynes Aff.; Ex. E at 19). On December 22, 1980, Petitioner was convicted in the Polk County Circuit Court, Case No. 80-480, of armed robbery and sentenced to fifty (50) years of imprisonment, less jail credit, with a 3-year mandatory minimum (Ex. A, Haynes Aff.; Ex. D). The offense conduct occurred on February 17, 1980 (Ex. A, Haynes Aff.; Ex. D). The FPC revoked Petitioner's parole effective February 19, 1980, and Petitioner was recommitted to the FDOC (Ex. A, Haynes Aff.; Ex. E at 20). In imposing sentence, the Polk County Circuit Court was silent as to how the sentence in Case No. 80-480 was to run with respect to the sentence in Case No. 73-987 (*see* Ex. D). Therefore, the FDOC ran the sentence in Case No. 80-480 consecutive to the remaining sentence in Case No. 73-987, pursuant to Florida Statutes Section 921.16(1) (Ex. A, Haynes Aff.).[2] Additionally, the FDOC combined the two terms of imprisonment into one overall 90-year term for purposes of awarding and forfeiting gain time pursuant to Florida Statutes Section 944.275 (*id.*).

In 1989, Petitioner was released to parole supervision (Ex. A, Haynes Aff.; Ex. E at 21–22). On September 27, 1991, the FPC issued a Warrant for Retaking Parole Releasee, upon Petitioner's arrest on new criminal charges (Ex. A, Haynes Aff.; Ex. E at 23). On May 13, 1992, the FPC ordered him released from FDOC custody to parole supervision (Ex. A, Haynes Aff.; Ex. E at 24).

On October 9, 1992, the FPC issued a Warrant for Retaking Parole Releasee upon Petitioner's arrest on new criminal charges (Ex. A, Haynes Aff.; Ex. E at 25). On July 7, 1993, the FPC revoked his parole, effective October 8, 1992, with credit for the periods January 1–24, 1992, and September 6–23, 1992 (Ex. A, Haynes Aff.; Ex. E at 26–27).

In 1995, the Florida Supreme Court determined that statutory changes to the gain time statute, Florida Statutes Section 944.275, in effect between July 1, 1978 and June 16, 1983, required

---

[2] Section 921.16 provides that sentences of imprisonment for offenses not charged in the same indictment, information, or affidavit shall be served consecutively, unless the court directs that two or more of the sentences be served concurrently. Fla. Stat. § 921.16(1).

the FDOC to treat consecutive sentences imposed for offenses committed during that time as individual and distinct sentences, instead of one overall combined term, for purposes of processing gain time awards and forfeitures. *See* <u>Orosz v. Singletary</u>, 655 So. 2d 1112 (Fla. 1995). Because one of Petitioner's offenses was committed within the <u>Orosz</u> period, the FDOC adjusted his sentence structure and administered the sentences separately for purposes of gain time (Ex. A, Haynes Aff.). Petitioner's 40-year sentence in Case No. 73-987 was determined to be fully satisfied on December 10, 2000, whereupon he began serving and earning gain time on his 50-year sentence in Case No. 80-480 (*id.*).

On May 20, 2003, the FPC directed the FDOC to release Petitioner to parole supervision on his 50-year sentence (Ex. A, Haynes Aff.; Ex. E at 28–31). At that time, he had served only 1,180 days (287 days of jail credit and 893 days in prison, from December 10, 2000 to May 20, 2003) of his 18,250-day sentence (Ex. A, Haynes Aff.). Petitioner was placed on parole supervision until February 14, 2050 (Ex. A, Haynes Aff.; Ex. E at 28–31). As a special condition of parole, Petitioner was placed on community control until November 20, 2003 (Ex. E at 31). At the time of his release, his maximum release date was February 14, 2050, and his tentative release date was calculated as January 27, 2033 (Ex. A, Haynes Aff.; Ex. E at 28). Petitioner characterizes his May 20, 2003 release differently. He states that although the Certificate of Parole classified his supervision as parole, it was the functional equivalent of conditional release, because he had completed his sentence by virtue of time served and gain time prior to his release on May 20, 2003 (doc. 1-1, supporting memorandum at 4). Petitioner concedes the certificate of parole provided he was to remain under supervision until February 14, 2050 (*id.*).

On May 19, 2006, the FPC issued a Warrant for Retaking Parole Releasee based upon Petitioner's use and/or possession of cocaine and marijuana (Ex. A, Haynes Aff.; Ex. E at 32). On June 30, 2006, Petitioner returned to FDOC custody awaiting a parole revocation hearing (Ex. A, Haynes Aff.). On September 27, 2006, the FPC revoked his supervision, effective June 7, 2006 (Ex. A, Haynes Aff.; Ex. E at 33). Based upon the parole revocation, the FDOC forfeited Petitioner's basic gain time on a pro rata basis (Ex. A, Haynes Aff.). The FDOC additionally forfeited all other gain time earned up to the date of revocation, pursuant to Florida Statutes Section 944.28(1) (*id.*).

Petitioner sought review of the FDOC's calculation of his sentence in the Florida courts by filing a petition for writ of habeas corpus in the Florida First District Court of Appeal ("First DCA") (doc. 29, Ex. 1). The First DCA transferred the petition to the Leon County Circuit Court, Case No. 07-CA-2150 (*id.*). The state circuit court denied the petition on October 16, 2008 (doc. 29, Ex. 2). Petitioner sought review of the decision by filing a petition for writ of certiorari in the First DCA, Case No. 1D08-5419 (doc. 29, Ex. 3). The First DCA denied the petition on the merits on May 6, 2009, with the mandate issuing July 1, 2009 (doc. 29, Ex. 4). Lancaster v. McNeil, 10 So. 3d 635 (Fla. 1st DCA 2009) (Table).

Petitioner filed the instant federal habeas action on August 4, 2009 (doc. 1 at 1).

II.     STANDARD OF REVIEW

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States. As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA). Pub.L. 104-132, § 104, 110 Stat. 1214, 1218–19. In relevant part, section 2254(d) now provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254 (2002).

The United States Supreme Court explained the framework for § 2254 review in <u>Williams v. Taylor</u>, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).³ The appropriate test was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied—the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412–13 (O'Connor, J., concurring); <u>Ramdass v. Angelone</u>, 530 U.S. 156, 120 S. Ct. 2113, 2119–20, 147 L. Ed. 2d 125 (2000). In employing this test, the Supreme Court has instructed that on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." <u>Lockyer v. Andrade</u>, 538 U.S. 63, 71–72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003). The law is "clearly established" if Supreme Court precedent at the time "would have compelled a particular result in the case." <u>Neelley v. Nagle</u>, 138 F.3d 917, 923 (11th Cir. 1998), *overruled on other grounds by* <u>Parker v. Head</u>, 244 F.3d 813, 835 (11th Cir. 2001).

---

³ Unless otherwise noted, references to <u>Williams</u> are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13). The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'" Lockyer, 538 U.S. at 73 (quoting Williams, 529 U.S. at 405–06). The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002) (quoting Williams, 529 U.S. at 405–06). If the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim.

If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases. The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable." Williams, 529 U.S. at 409. Whether a State court's decision was an unreasonable application of a legal principle must be assessed in light of the record the court had before it. Holland v. Jackson, 542 U.S. 649, 652, 124 S. Ct. 2736, 2737–38, 159 L. Ed. 2d 683 (2004) (per curiam); cf. Bell v. Cone, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 1851 n.4, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law). An objectively unreasonable application of federal law occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001). "In determining whether a state court's decision represents an unreasonable application of clearly established federal law, a federal court conducting habeas review 'may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law

erroneously or incorrectly. Rather, that application must also be unreasonable.'" Gill v. Mecusker, 633 F.3d 1272, 1287 (11th Cir. 2011) (quoting Williams, 529 U.S. at 411) (citing Harrington v. Richter, — U.S. —, 131 S. Ct. 770, 786–87 (Jan. 19, 2011)). The AEDPA's "unreasonable application" standard focuses on the state court's ultimate conclusion, not the reasoning that led to it. *See* Gill, *supra* at 1291 (citing Harrington, 131 S. Ct. at 786). Under § 2254(d), a habeas court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court. *See* Harrington, 131 S. Ct. at 786; *see also* Gill, *supra,* at 1292 (the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see e.g.* Miller-El, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"); Jones v. Walker, 469 F.3d 1216, 1226–27 (11th Cir. 2007) (holding that § 2254(d)(2)'s "unreasonable determination" standard "must be met by clear and convincing evidence," and concluding that that standard was satisfied where prisoner showed "clearly and convincingly" that

the state court's decision "contain[ed] an 'unreasonable determination' of fact."). The "unreasonable determination of the facts" standard is only implicated to the extent that the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. *See* Gill, 2010 WL 609844, at * 18. A petitioner is not entitled to relief unless he demonstrates by clear and convincing evidence that the record reflects an insufficient factual basis for affirming the state court's decision. *Id.*

Only if the federal habeas court finds that the petitioner satisfied AEDPA, and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims. *See* Panetti v. Quarterman, 531 U.S. 930, 953, 127 S. Ct. 2842, 2858, 168 L. Ed. 2d 662 (2007); Jones, 469 F.3d 1216 (same). The writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a).

Within this framework, the court will review Petitioner's claim.

III. PETITIONER'S CLAIM

Ground One: "Petitioner [sic] detention is in violation of the U.S.C.A. Constitutional Article I, Section 10, Chapter 1."

Petitioner contends his continued incarceration violates the Ex Post Facto Clause (doc. 1 at 4, 7; doc. 1-2 supporting memorandum).[4] He argues the FDOC improperly combined his 40-year and 50-year sentences for purposes of calculating his gain time and his maximum sentence expiration date of February 14, 2050, in violation of Orosz v. Singletary, 655 So. 2d 1112 (Fla. 1995) (doc. 1-2 at 6–7). He asserts his 50-year sentence expired, by virtue of time served and gain time, prior to his release in 2003; therefore, the FPC could not release him subject to parole supervision (doc. 1 at 4; doc. 1-2 at 7). He further argues that because he was not subject to parole supervision, the type of supervision imposed upon his release was the functional equivalent of conditional release (doc. 1 at 7; doc. 1-2 at 7–10). However, subjecting him to conditional release supervision violated the constitutional prohibition against ex post facto laws, becuase the conditional

---

[4] The page references used in this Report reflect the page numbers as enumerated in the court's electronic docketing system rather than those the parties may have assigned.

Case No. 3:09cv333/MCR/EMT

release statute, Florida Statutes Section 944.1405, was enacted after the dates of his offense (doc. 1 at 7; doc. 1-2 at 7–10).

Respondent contends Petitioner's 50-year sentence in Case No. 80-480 had not expired when he was released in 2003 (doc. 18 at 10).  Respondent states the FDOC ran Petitioner's 40-year sentence in Case No. 73-987 and his 50-year sentence in Case No. 80-480 consecutively, pursuant to section 921.16(1), because the court in the later sentencing did not explain whether the two sentences were to run consecutively or concurrently (*id.*).  Therefore, by operation of law, the sentences were deemed to run consecutively (*id.*).  Respondent argues the Orosz decision did not alter the designation of these sentences as running consecutively; it held that for such consecutive sentences imposed for offenses occurring between July 1, 1978 and June 16, 1983, the FDOC could not combine the sentences for purposes of awarding and forfeiting gain time (*id.*).  Respondent asserts that since Petitioner had one offense committed within the Orosz period, the FDOC administered the sentences separately for purposes of awarding and forfeiting gain time, and calculated a separate tentative release date for each sentence (*id.* at 10–11).  Respondent states the adjustment resulted in his completing his 40-year sentence on December 10, 2000, and beginning his 50-year sentence on that date (*id.* at 11).  Respondent states when Petitioner was released to parole supervision on May 20, 2003, his 50-year sentenced had not been satisfied (*id.* at 11–12).

Respondent further argues Petitioner was placed on parole supervision, not conditional release supervision, upon his release on May 20, 2003 (doc. 18 at 12).  The Certificate of Parole directed the FDOC to release him specifically to the terms and conditions of **parole** supervision, with no mention of conditional release supervision (*id.*) (emphasis in original).  Respondent asserts the only other mention of any other type of supervision was in paragraph 18 of the Statement of Conditions, attached to the Certificate, which stated Petitioner must complete community control as a special condition of parole and thereafter remain on parole supervision (*id.* at 12–13). Moreover, Petitioner signed the Certificate, evidencing his understanding that he was on parole supervision with community control, not any other type of supervision (*id.* at 13).

Respondent contends Petitioner's placement on parole supervision was not an ex post facto violation, because to constitute an ex post facto violation, Petitioner would have to have been released to a supervision program created by the legislature after the date of his offense conduct

(doc. 18 at 8–9, 13). Respondent states parole supervision was created in 1941, prior to Petitioner's offense conduct in either of his cases; therefore, placing him on parole supervision did not violate the Ex Post Facto Clause (*id.*).

        1.        Clearly Established Supreme Court Law

Article I, Section 10, of the United States Constitution prohibits states from enacting ex post facto laws. Under the Ex Post Facto Clause, a state may not retroactively apply any law that "inflicts a greater punishment, than the law annexed to the crime, when committed." Calder v. Bull, 3 U.S. 386, 390, 3 Dall. 386, 1 L. Ed. 648 (1798). Such laws implicate the core ex post facto concerns of "the lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed when the crime was consummated." Lynce v. Mathis, 519 U.S. 433, 441, 117 S. Ct. 891, 137 L. Ed. 2d 63 (1997) (quoting Weaver v. Graham, 450 U.S. 24, 30, 101 S. Ct. 960, 67 L. Ed. 2d 17 (1981)) (emphasis in original). As the Supreme Court stated in Lynce,

> To fall within the ex post facto prohibition, a law must be retrospective—that is, "it must apply to events occurring before its enactment"—and it "must disadvantage the offender affected by it," [Weaver, 450 U.S.] at 29, 101 S. Ct., at 964, by altering the definition of criminal conduct or increasing the punishment for the crime, *see* Collins v. Youngblood, 497 U.S. 37, 50, 110 S. Ct. 2715, 2723, 111 L. Ed. 2d 30 (1990).

519 U.S. at 441. The question of whether a particular legislative change produces consequences sufficient to invoke the prohibitions of the Ex Post Facto Clause is a matter of "degree." Beazell v. Ohio, 269 U.S. 167, 46 S. Ct. 68, 70 L. Ed. 216 (1925).

It is clear that not every legislative change that "disadvantages" an offender or affects a prisoner's "opportunity to take advantage of the provisions for early release" violates the Constitution. California Dept. of Corrections v. Morales, 514 U.S. 499, 115 S. Ct. 1597, 131 L. Ed. 2d 588 (1995). Rather, a law must produce "a sufficient risk of increasing the measure of punishment attached to the covered crimes." Morales, 514 U.S. 509. While no exact formula for determining when a particular legislative change produces a sufficient effect on punishment to fall within the prohibitions for the Ex Post Facto Clause, the United States Supreme Court has made clear that the risk of affecting a prisoner's actual term of confinement must be more than

"speculative and attenuated." *Id.* Under Morales, the statute must affect the original punishment and produce a sufficient risk of increasing the original punishment. *Id.*

        2.        Federal Review of State Court Decision

Petitioner raised this ex post facto claim in his mandamus petition filed in the Leon County Circuit Court (doc. 29, Ex. 1). The state circuit court found as fact that Petitioner fulfilled his 40-year sentence in Case No. 73-987 in December of 2000, at which point he began serving the 50-year sentence imposed in Case No. 80-480 (doc. 29, Ex. 2). The court further found that in May of 2003, Petitioner was released from prison on parole supervision, spent 1114 days at liberty on parole, violated one or more conditions of parole, and was returned to prison to serve the remainder of the 50-year term (*id.*). The court determined that pursuant to Florida statutes in effect at the time of Petitioner's offense conduct in Case No. 80-480, Petitioner forfeited all gain time credit he accrued prior to his release by violating his parole (*id.*). The court determined that the FDOC correctly and accurately calculated Petitioner's release date, consistent with the orders of the sentencing court, orders of the FPC, and applicable Florida law (*id.*).

Petitioner sought review of the decision with the First DCA, but the court summarily denied relief. When faced with a state appellate court's summary affirmance of a trial court's decision, the "unreasonable application" standard focuses on the state court's ultimate conclusion, not the reasoning that led to it. *See* Gill, 633 F.3d at 1291 (citing Harrington, 131 S. Ct. at 786). The federal court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court. *See* Harrington, 131 S. Ct. at 786; *see also* Gill, 633 F.3d at 1292 (holding that the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts).

Initially, Petitioner has failed to rebut, by clear and convincing evidence, the state court's finding that he began serving the 50-year sentence imposed in Case No. 80-480 in December of 2000. Petitioner asserts, both here and in his state petition, that he completed the 50-year sentence

by the time he was released on May 20, 2003, by virtue of time served on the 50-year sentence since the date it was imposed (December 22, 1980) and gain time he had been awarded since that date (*see* doc. 1; *see also* doc. 29, Ex. 1).  However, Petitioner overlooks the fact that the 50-year sentence ran <u>consecutively</u> to the 40-year sentence in Case No. 73-987, pursuant to Florida Statutes Section 921.16(1).  Therefore, the 50-year sentence did not commence on the date it was imposed; rather, it commenced on December 10, 2000, when the 40-year sentence expired.  Because Petitioner's 50-year sentence had not expired when he was released in 2003, the FPC was authorized to release him to parole supervision.

Petitioner has likewise failed to rebut the state court's finding that he was released on parole, not conditional release, on May 20, 2003.  Further, this finding is supported by the record.  The Certificate of Parole expressly states he was released on May 20, 2003, to parole supervision, with community control as a special condition of parole until November 20, 2003 (Ex. E. at 28–31).  Petitioner signed the Certificate, indicating his understanding that he was released on parole, subject to the terms and conditions enumerated in the Certificate, including community control supervision until November 20, 2003 (*id.*).  Petitioner argues the FPC "confirmed" that his supervision was conditional release in a letter dated October 30, 2006 (doc. 1-2 at 5).  That letter reads:

> Dear Mr. Lancaster:
>
> This will acknowledge receipt of your letter dated October 9, 2006, in which you requested information relating to your Conditional Release Violation Hearing.
>
> Enclosed are the copies you requested. . . .

(doc. 1-3).  Petitioner mischaracterizes the content of the letter.  The letter did not constitute a determination that Petitioner's supervision upon his release in 2003 was conditional release instead of parole, it merely acknowledged Petitioner's request for information about his violation hearing (which he likely characterized as a "Conditional Release Violation Hearing").

Moreover, Petitioner failed to show that any of the state statutes used to calculate his sentence, including the award and forfeiture of gain time, were applied retroactively to him.  As previously discussed, the law in existence at the time Petitioner was sentenced in Case No. 80-480 provided that his sentence in that case must be served consecutively to the sentence in Case No. 73-987, because the sentencing court did not direct that they be served concurrently.  *See* Fla. Stat.

§ 921.16(1). Additionally, the FDOC separated Petitioner's sentences for purposes of awarding and forfeiting gain time, pursuant to Orosz. The affidavit of Stacey Haynes, a Correctional Services Administrator in the Bureau of Sentence Structure & Population Management Systems Analysis Unit of the FDOC, expressly states the FDOC adjusted Petitioner's sentence structure and administered the sentences separately for purposes of gain time, in accordance with Orosz (Ex. A, Haynes Aff.). Petitioner's 40-year sentence in Case No. 73-987 was determined to be fully satisfied on December 10, 2000, whereupon he began serving and earning gain time on his 50-year sentence in Case No. 80-480 (*id.*).[5] Petitioner has offered no evidence to rebut Ms. Haynes's statement. Further, as the state court determined, Florida law in existence at the time of Petitioner's offense conduct in February of 1980, provided that when Petitioner was released on parole, he retained only a conditional interest in his gain time, and once he violated supervision, he forfeited all gain time credit accrued prior to his release (*see* doc. 29, Ex. 2 (citing Fla. Stat. §§ 944.28(1), Fla. Stat. § 947.23(7))). *See also* Dowd v. Singletary, 704 So. 2d 1052, 1054 (Fla. 1998). This federal court must abide by the state court's interpretation of state law. *See* Bradshaw v. Richey, 546 U.S. 74, 76, 126 S. Ct. 602, 163 L. Ed. 2d 407 (2005); Mullaney v. Wilbur, 421 U.S. 684, 691, 95 S. Ct. 1881, 44 L. Ed. 2d 508 (1975); Carrizales v. Wainwright, 699 F.2d 1053, 1055 (11th Cir. 1983). Based upon the state court's interpretation of the Florida statutes, upon Petitioner's return to FDOC custody after his parole violation in 2006, he was required to serve both the forfeited gain time and any unserved time left on his sentence.[6]

---

[5] Whether Orosz required the FDOC to recalculate Petitioner's sentences is unclear. The Florida Supreme Court expressly noted that its decision had limited precedential effect and should affect only those inmates who: (1) committed an offense during the interval between July 1, 1978, and June 15, 1983; (2) were in service of a sentence at the time of the offense; (3) were given a sentence to run consecutively to the sentence for the previous offense; and (4) had completed the sentence for the previous offense before June 17, 1993. 693 So. 2d at 540 n.1 (emphasis added). Petitioner did not complete his 40-year sentence in Case No. 73-987 before June 17, 1993. Therefore, it is not apparent he was even entitled to the benefit of Orosz.

[6] According to Ms. Haynes's affidavit, at the time of Petitioner's release, he had served 1,180 days (287 days of jail credit, 891 days from December 10, 2000 to May 20, 2003, and 2 days of credit from the FPC) (doc. 18, Ex. A, Haynes Aff.). Petitioner's current tentative release date, as of the date of Ms. Haynes's affidavit, January 22, 2010, was August 7, 2035 (*id.*). Ms. Haynes calculated this date as follows:

| | |
|---|---|
| Effective Date of Revocation | June 7, 2006 |
| Time Not Served | + 17070 |
| Basic Gain-time Applied to Time Remaining to Serve | − 5612 |

Case No. 3:09cv333/MCR/EMT

Petitioner failed to demonstrate that the state court's adjudication of his ex post facto claim was based upon an unreasonable determination of the facts, or was contrary to or an unreasonable application of clearly established federal law. Therefore, he is not entitled to federal habeas relief.

IV. CERTIFICATE OF APPEALABILITY

As amended effective December 1, 2009, § 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483–84, 120 S. Ct. 1595, 1603–04, 146 L. Ed. 2d 542 (2000) (explaining how to satisfy this showing) (citation omitted). Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

The second sentence of new Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully **RECOMMENDED**:

1. That the petition for writ of habeas corpus (doc. 1) be **DENIED**.
2. That a certificate of appealability be **DENIED**.

At Pensacola, Florida, this 20th day of October 2011.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

---

| | |
|---|---|
| Total gain-time earned since Return as a Violator | − 805 |
| Current Tentative Release Date | August 7, 2035 |

Case No. 3:09cv333/MCR/EMT

## NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  **Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.**  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).